THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROBERT D. FALETTI, Defendant-Appellee.

Third District   No. 3—90—0645

Opinion filed June 12, 1991.—Rehearing denied July 15, 1991.

Joseph Navarro, State's Attorney, of Ottawa (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Perona Law Offices, of Peru (Gary L. Peterlin, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

The defendant, Robert D. Faletti, was charged with the offense of driving under the influence of alcohol. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.) Prior to trial, the defendant filed motions to quash the arrest and suppress evidence. He claimed that the police lacked reasonable grounds to stop his auto. Following a hearing, the trial court granted the defendant's motion to suppress. The State appeals. We affirm.

At the hearing on the defendant's motion, Oglesby police officer Russel Lemmer testified that on May 19, 1989, he made a traffic stop on Route 351 in La Salle County, Illinois, when he noticed a car heading for the rear of his squad car. At that time, the officer and the driver of the stopped vehicle, John Gordan, were standing in front of the officer's squad car. When the officer saw the approaching auto, it was about 1½ car lengths away from the rear of his squad car. The officer then grabbed Gordan and pulled him some six feet away from the roadway, towards a drainage ditch that ran along the roadway. The officer noted that he took this action to prevent either himself or Gordan from getting pinned between the squad car and Gordan's auto.

Officer Lemmer further testified that he observed the oncoming auto almost strike the rear of his auto, then go off the roadway and over the center line. The officer then returned to his squad car and took after the vehicle. As he followed the auto, he noticed it cross the center line. The officer then stopped the vehicle and placed the defendant, who was the driver, under arrest for driving under the influence of alcohol.

On cross-examination, Officer Lemmer admitted that he could not accurately gauge the speed of the defendant's auto when it approached, but he opined that it did not slow down. The officer also admitted that he heard no squealing of tires and that he had made up his mind to stop the vehicle after it passed his squad car.

John Gordan testified that he had been stopped by Officer Lemmer on May 19, 1989. Gordan stated that he was speaking with the officer at approximately 11:30 p.m. when the officer grabbed him, told him to get down, and pulled him some six feet off the roadway. Gordan related that he immediately looked back toward the road and observed an automobile almost strike his automobile. The auto then went off the roadway and over the center line. Officer Lemmer thereafter took off after the vehicle.

David Ernat, an employee of L.T.V. Steel and a police commissioner for the city of Oglesby, testified that he was on his way to work at ap-

proximately 11:20 p.m. on May 19, 1989, when he came upon Officer Lemmer's squad car. Ernat stated that the officer's squad car was parked partially on the road with its emergency lights activated. Ernat noted that in order to safely pass the officer's vehicle, it was necessary to cross the center line that divided the two lanes of traffic.

The defendant testified the squad car was partially blocking his lane of traffic and that he drove his car momentarily over the center line so as to avoid the auto. He denied that he narrowly missed the squad car. He stated that the officer and Gordan were not around their vehicles when he passed them, but were in the field that abuts the roadway.

Robert Faletti, the defendant's son, also testified. Robert stated that he was driving behind his father and that his father did not narrowly miss the squad car. Robert related that the officer's squad car was parked partially on the roadway and his father safely crossed the center line so as to avoid the officer's auto. Robert did not believe his father was driving under the influence of alcohol.

Following the presentation of evidence, the trial court found that: (1) the officer's squad car was parked in such a manner that vehicles approaching from the south would have to cross into the northbound lane of traffic to safely pass the officer's auto; (2) the officer believed that he was going to be struck by the defendant's automobile and jumped out of the way; (3) the defendant's auto did not appear to slow as it approached the officer's car; and (4) there was no evidence presented as to the speed of the defendant's vehicle and no evidence of the squealing of tires.

The trial court further found that although some testimony was presented that the defendant crossed the center lane of traffic while the officer was following his vehicle, this evidence should not be considered because the officer had already made up his mind to stop the vehicle. The court concluded that the officer lacked reasonable grounds to stop the defendant's vehicle and ordered all evidence obtained after the stop suppressed.

The issue presented on appeal is whether the trial court's determination that the officer lacked reasonable grounds to stop the defendant's vehicle was against the manifest weight of the evidence.

■ The correct standard to be applied in ascertaining whether an investigative stop is justified is not probable cause to arrest or search, but rather a less exacting standard. (*People v. Repp* (1988), 165 Ill. App. 3d 90, 518 N.E.2d 750.) To stop an automobile, a police officer must have an articulable and reasonable suspicion that the motorist is unlicensed, that the automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of a law.

64

(*Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391.) This is the "reasonable grounds" test. (*People v. Collins* (1987), 154 Ill. App. 3d 149, 506 N.E.2d 963.) Erratic driving, such as weaving across a roadway or even weaving within a lane, may provide a sufficient basis for an investigative stop of a motor vehicle. (*People v. Loucks* (1985), 135 Ill. App. 3d 530, 481 N.E.2d 1086.) However, an automobile's single, momentary crossing of the center line, without more, does not necessarily provide a sufficient basis for an investigatory stop. *People v. Collins* (1987), 154 Ill. App. 3d 149, 506 N.E.2d 963.

The State argues that the officer possessed a reasonable and articulable reason for stopping the defendant's auto. It also argues that the trial court erred in failing to consider the officer's observations during the time he was following the defendant.

■ ■ A trial court's decision regarding a motion to suppress will not be disturbed unless it is determined to be manifestly erroneous. (*People v. Lillig* (1988), 174 Ill. App. 3d 647, 529 N.E.2d 256.) Initially, we note that the important question is the correctness of the trial court's ruling and not the correctness of its reasoning in reaching that result. (*Scott v. Association for Childbirth at Home, International* (1980), 85 Ill. App. 3d 311; *Hickey v. Illinois Central R.R. Co.* (1964), 30 Ill. 2d 163.) Although the trial court should have factored into its decision the later observed crossing of the center line, we nevertheless find that, under the circumstances, the court's decision was not manifestly erroneous.

Here, both the defendant and his son testified that the defendant safely passed the officer's squad car and posed no danger to either the officer or his vehicle. Although Gordan and the officer testified differently, it is the trial court's function, as the trier of fact, to determine the credibility of the witnesses, the weight to be accorded their testimony, and the inferences to be drawn from the evidence. *People v. Jackson* (1987), 161 Ill. App. 3d 573, 515 N.E.2d 219.

Based on the record before us, we cannot say that the trial court's finding was manifestly erroneous. The court simply resolved a conflict in the evidence in favor of the defendant. Accordingly, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

GORMAN and SLATER, JJ., concur.